Texas & New Orleans Railroad Company et al. v. Cliffie C. Green and Willie E. Green.

Decided March 3, 1906.

### 1.—Amended Motion for New Trial.

It is within the discretion of the trial court to allow a motion for new trial to be amended after the expiration of the two days after trial. The practice, however, of filing a mere skeleton of the motion within the two days and a full motion afterwards should be discouraged.

### 2.—Pleadings—Issue—Charge of Court.

The real issue was as to whether projecting spikes and a sliver, or an unblocked frog, was the immediate cause of the employe's death, his remaining between the cars while trying to uncouple them being, in either case, only remotely the cause of his death. The plaintiffs alleged that the former was the immediate cause of his death. The court charged the jury, in substance, that if, through the negligence of defendant, the defective coupling caused the employe's death they should find for plaintiffs. Held, error.

### 3.—Same.

It was proper for the court to submit to the jury the issue of fact as to the condition of the coupling appliance, for without this, there would be no explanation of the employe remaining between the moving cars.

### 4.—Invited Error.

The rule of invited error is one of estoppel. Where the court, upon the trial, is requested to affirm a proposition of law in the charge and it is so affirmed, the rule applies.

### 5.—Death of Father—Measure of Damages.

Minor children are entitled to recover whatever pecuniary benefits they may have been deprived of by the death of their father, including the reasonable value of such nurture, care and education as they would have received had he lived, but neither sorrow for his death nor loss of his society are elements of damage.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Baker, Botts, Parker & Garwood, C. L. Carter* and *Andrews, Ball & Streetman,* for appellants.—The court erred in charging the jury upon any theory that the condition of the drawhead, its pins or links could become the basis of an action for recovery by the plaintiffs, and the charge complained of submitting this matter as issue to the jury is error. Houston & T. C. v. Rowell, 92 Texas, 147; Wheeler v. Tyler S. E. Ry., 43 S. W. Rep., 876; Western U. Tel. Co. v. Kendzora, 77 Texas, 257; Graves v. Wilson, 48 Texas, 324; Austin v. Talk, 20 Texas, 167; Andrews v. Smithwick, 20 Texas, 118; Earle v. Thomas, 14 Texas, 583; McGreal v. Wilson, 9 Texas, 429; Hampton v. Dean, 4 Texas, 455; Yarborough v. Tate, 14 Texas, 483; Steagall v. Mc-Kellar, 20 Texas, 268.

Plaintiffs' right to recover in this case, under the statute in force at the time of Green's death, could be predicated only upon the gross negligence of defendants' agents. Rev. Stats. 1879, art. 2899; Texas & Pac. Ry. v. Hill, 71 Texas, 459; Galveston, H. & S. A. Ry. v. Cook, 16 S. W. Rep., 1039; Southern Cotton Press Co. v. Bradley, 52 Texas,

601; Dallas City Ry. v. Beeman, 74 Texas, 291; Houston & T. C. Ry. v. Cowser, 57 Texas, 305.

The court erred, to the prejudice of these defendants, in its general charge to the jury, which reads as follows: "On the measure of damages, I charge you that should your verdict be for the plaintiffs, you should find for them in such an amount as you believe from the evidence that, if paid now, would fairly and reasonably compensate them in damages proportionate to the pecuniary injury, if any, to them from the death of their father; and in computing such damages, if any, you may consider the loss of pecuniary assistance, if any, of maintenance, support and education, if any, of the nurture and intellectual and physical training, if any, of the father, estimating the money value to said children of the life of their father, not allowing anything for the loss of the affection or society of the deceased, but confining the damages to the fair and reasonable pecuniary loss, if any, suffered by the children in the loss of the maintenance, support, education, training and financial assistance, if any, of the father; and should you find for plaintiffs, you will apportion the recovery among the two said minors, specifying how much is awarded to each in the verdict."

The charge is erroneous, in that it failed to exclude from the consideration of the jury compensation by way of solace, if any, sorrow, or anguish suffered by the plaintiffs as a result of the death of their father. International & G. N. Ry. v. McVey, 12 Texas Civ. App., 992; St. Louis S. W. Ry. v. Highnote, 74 S. W. Rep., 920; Missouri, K. & T. Ry. v. Hannig, 91 Texas, 349; Texas Cent. Ry. v. Brock, 31 S. W. Rep., 500; Texas Brewing Company v. Dickey, 49 S. W. Rep., 936; Galveston, H. & S. A. Ry. v. Porfert, 72 Texas, 344; International & G. N. Ry. v. Tisdale, 10 Texas Ct. Rep., 311; Galveston, H. & S. A. Ry. v. Perry, 10 Texas Ct. Rep., 669; Ft. Worth & D. C. Ry. v. Measles, 81 Texas, 476; Western U. Tel. Co. v. Drake, 29 S. W. Rep., 920; Gulf, C. & S. F. Ry. v. Sparger, 32 S. W. Rep., 50; Texas & Pac. Ry. v. Durrett, 58 S. W. Rep., 188; International & G. N. Ry. v. Butcher, 12 Texas Ct. Rep., 115.

The court erred in refusing to give defendants' special charge No. 2, which reads as follows:

"Under the allegations of the plaintiffs' petition in this case, the plaintiffs can not recover for the death of their father, E. C. Green, if the same was caused as the sole, proximate result of his foot being caught in a frog of defendant's track, and thereby killed.

"You are therefore charged that if you believe from the evidence in this case that the death of the said Green was so caused, then you will find in favor of the defendants."

If the death of Ed. C. Green, in 1886, was caused by the negligence of his fellow servants, plaintiffs were not entitled to recover. International & G. N. Ry. v. Ryan, 82 Texas, 571; Houston & T. C. Ry. v. Rider, 62 Texas, 268; Texas & Pac. Ry. v. Harrington, 62 Texas, 601; Missouri Pac. Ry. v. Watts, 63 Texas, 552; Gulf, W. T. & P. Ry. v. Ryan, 69 Texas, 668; Galveston, H. & S. A. Ry. v. Farmer, 73 Texas, 87.

*J. R. Norton, Wilson & Dabney* and *A. L. Jackson,* for appellees.—

Appellants' first assignment of error, presenting an issue of fact, should not be considered, because not based upon any ground assigned in a motion for a new trial, filed within the time provided by law, but only in a motion overruled generally by the court, filed fifteen days thereafter, and not presenting any excuse for the delay in filing. Nor can this rule be obviated by the filing of a paper marked "motion for a new trial," within the two days, and containing none of the elements of a motion, and intended merely to avoid the statute. Rev. Stats., 1373; Rev. Stats., 1371; Linn v. Le Compte, 47 Texas, 440; Sams v. Creager, 85 Texas, 498; Gonzales v. Adoue, 56 S. W. Rep., 550; Gill v. Rodgers, 37 Texas, 631; Homes v. City of Henrietta, 46 S. W. Rep., 872; Shirley v. Byrnes, 34 Texas, 646; Warner v. Bailey, 7 Texas, 520; Akard v. Western Mortgage and Investment Co., 34 S. W. Rep., 140; Reeves v. Roberts, 62 Texas, 550; Mt. Vernon Bank v. Porter, 49 S. W. Rep., 984; Merrielees v. Wabash Ry. Co., 63 S. W. Rep., 723; Kennedy v. Harris, 58 S. W. Rep., 569-570; Waitman v. Bowles, 58 S. W. Rep., 687.

The court did not err in submitting to the jury to determine whether or not it was gross negligence to furnish round pins for square holes in the drawhead, and the evidence does not conclusively show that this risk was assumed by Green, and the verdict of the jury under the proper charge given is conclusive on that point. St. Louis & S. F. Ry. Co. v. Doyle, 25 S. W. Rep., 461; St. Louis & S. F. Ry. Co. v. McClain, 80 Texas, 93; Missouri, K. & T. Ry. Co. v. Follin, 68 S. W. Rep., 810; San Antonio & A. P. Ry. Co. v. Englehorn, 62 S. W. Rep., 561; Magee v. North Pacific Coast Ry., 78 Cal., 430; 12 Am. St. Rep., 74; 20 Am. & Eng. Ency. of Law (2d ed.), 133, 122, 71; Galveston, H. & S. A. Ry. v. Smith, 57 S. W. Rep., 999; Gulf, C. & S. F. Ry. v. Gray, 63 S. W. Rep., 930.

The charge of the court is not misleading, and could not reasonably have induced the jury to give double damages; and when synonyms and phrases expressing one idea are used they will be taken together, and mere tautology will not be twisted to mean two different things. San Antonio & A. P. Ry. v. Corley, 87 Texas, 434; Missouri, K. & T. Ry. v. Hannig, 41 S. W. Rep., 197; Texas Cent. Ry. v. Brock, 30 S. W. Rep., 277; Gulf, C. & S. F. Ry. v. Perry, 30 S. W. Rep., 709 and 710; Gulf, C. & S. F. Ry. v. Brown, 40 S. W. Rep., 614; St. Louis & S. W. Ry. v. Byers, 70 S. W. Rep., 560; Galveston, H. & S. A. Ry. v. Puente, 70 S. W. Rep., 362.

REESE, ASSOCIATE JUSTICE.—Cliffie C. and Willie E. Green, both minors, by their next friend, Mary J. Harriman, sued the Texas & New Orleans Railroad Company and the Southern Pacific Company to recover damages alleged to have been sustained by them by reason of the death of their father, E. C. Green, who was killed while in the employ of the defendants. Upon trial they recovered judgment for $12,000, being $6,000 to each, from which judgment the defendants prosecute this appeal.

E. C. Green, the father of appellees, was in the employ of appellants as a train brakeman on a freight train, and was killed on the night of the 16th of July, 1886, while engaged in switching in the railway yard

at Beaumont. The train on which the said Green was running was going east and had stopped for the purpose of switching some cars onto the sidetrack. Green went between two cars for the purpose of uncoupling and while doing so, the cars moving slowly at the time, he was run over and killed. As soon as the accident was discovered, the train was stopped and Green was found with part of his body just outside the north rail, his legs and part of his body crushed under the wheels, producing almost instant death.

It is alleged in the petition that the coupling apparatus was defective and would not permit the said Green to lift the pin so as to uncouple the cars and step back out of the way, and that while walking between the cars and trying to take out the pin he was tripped by projecting spikes and caught by a sliver projecting from the rail, causing the cars to knock him down and so injuring him as to cause his immediate death. That defendants were grossly negligent in failing to furnish said Green with a safe place to work and safe and proper appliances.

Appellants answered by general demurrer, general denial and pleaded specially contributory negligence and assumed risk, and negligence of fellow servants.

The first three assignments of error present the questions of sufficiency of the evidence to support the verdict and that the verdict is against the great preponderance of the evidence. These assignments must be overruled. As the judgment is reversed upon another ground, it is not proper here to discuss the evidence. We can not agree with appellees that these assignments should not be regarded because not embraced in the original motion for a new trial, but only in an amended motion filed more than two days after the judgment. It was within the discretion of the court to allow an amendment of the motion after the expiration of the two days, and it is believed to be a common practice to do so. The practice, however, of filing a mere skeleton of a motion to be substituted, after the expiration of two days, by a full motion is not to be commended and should be discouraged.

The theory presented by the evidence for appellees is that when Green went in between the cars to uncouple them, he found the pin stuck in the hole on account of a defective coupling appliance; that for this reason he was compelled to walk between the moving cars, in trying to extract the coupling pin, and that projecting spikes in the ties and a sliver projecting from the rail caught and threw him, and he was run over. This is the case made by their petition.

Appellants' theory was that while walking between the cars Green got his foot caught in an unblocked frog, which caused him to be run over.

The real issue was as to whether the projecting spikes and sliver, or the unblocked frog was the immediate cause of his being caught or thrown down, his remaining between the cars while trying to uncouple them being in either case only remotely the cause of his death. It is not pretended that he might not have done this with perfect safety but for the raised spikes and the sliver.

In paragraph three of the general charge the jury were instructed as follows:

"If, from the evidence, you believe that the coupling which the

deceased E. C. Green was endeavoring to uncouple, was unsafe, defective and dangerous, and that the coupling pins were too large for the pin hole or eye of the drawhead, and instead of being loose, so as to permit of them being lifted by the said E. C. Green, so as to effect said uncoupling, were fastened and could not be removed, or that the pin hole in the drawhead upon said car was too small and not of proper size to admit the use of pins of the size that were in said couplers and used by the defendants, and that thereby the said pins were fastened, and that the said E. C. Green was unable to remove them immediately, and step back from between the cars, and if you believe that such condition, if any, of such drawheads, rendered same not reasonably safe for use in switching, and that such condition, if any, was caused by a failure on the part of defendants, or either of them, to furnish reasonably safe appliances, and was due to gross negligence on the part of the defendants, or either of them, and caused the death of E. C. Green, then, in such state of facts, if any, you will find for the plaintiffs (unless under some other clause of this charge you find generally for the defendants, or either of them, and caused the death of E. C. Green, governed by the paragraph of the court's charge given on that subject. But in this connection you are charged that if, from the evidence, you believe the defendants had furnished a reasonably safe coupling apparatus, but that the dangerous condition of the one in question, if dangerous, was due to the negligent act of some fellow servant of E. C. Green, that is, some person employed by the same master, who did not have authority to employ and discharge employes, in putting a round pin into a square hole, when proper pins had been furnished, then, in such state of facts, if any, the defendants would not be liable for such defective coupling apparatus."

The giving of this charge is assigned as error, and the assignment must be sustained. In this charge the jury is instructed, in substance, that if the coupling appliance was defective, owing to the gross negligence of defendants, and if this defective coupling caused Green's death, they should find for the plaintiffs. Under this instruction, if correct, it would have been proper for the jury to find for the plaintiffs if they believed that Green got his foot caught in the unblocked frog, or if in any other way he was tripped and caused to fall while walking between the cars trying to pull the pin out of the hole in the drawhead. Under this charge it became entirely immaterial whether Green got caught and trippd by the sliver, or got his foot caught in the frog. Appellants would have been equally liable in either case. If the immediate cause of Green's death was getting his foot caught in the frog, or being caused to fall in any other way than as alleged in the petition, appellees would not be entitled to recover. No other part of the charge corrected the error indicated. As the evidence showed with little or no conflict that the pin was stuck in the drawhead, while it was sharply conflicting upon the point as to whether Green was caught and thrown by the projecting spikes and sliver, or by the unblocked frog, the charge may have been extremely prejudicial to appellants.

It was not error to submit to the jury the issue as to the defective drawhead or coupling appliance, for without this there would be no explanation of Green's remaining between the moving cars, and it

might be said that if he, without any cause or excuse, but purely of his own volition, continued to walk between the moving cars when there was no occasion for him to do so, the appellants would not be liable, no matter what was the immediate cause of the accident. The error in the charge was in basing the liability of appellants upon this ground alone. While the defective condition of the coupling, and the consequent difficulty in extricating the pin were material matters as explaining Green's remaining between the moving cars, and upon the question of whether he acted with ordinary care and prudence in doing so, it does not appear to us to be material whether appellants were or were not negligent in the matter of the coupling. The defective coupling, if it was defective, did not, in a legal sense, cause or contribute to his death, but is only explanatory of his act in remaining between the moving cars, upon the issue as to whether he acted as an ordinarily prudent man would have done in doing so, and this regardless of the negligence or not of the master in regard to the coupling.

Appellees contend that this charge was "invited error," and several charges requested by appellants are referred to in support of this contention, one of which was given.

Conceding that these instructions were prepared and handed to the court before the general charge was completed, none of them can be said to have invited the error in the court's charge referred to. They present various theories upon which the appellants would not be liable if the coupling appliance was defective and was the proximate cause of Green's death, but neither singly nor collectively do they present the proposition embodied in the charge of the court referred to. The most that can be said is that they invite the court to submit to the jury various theories connected with the defective coupling, but the vice in the charge of the court referred to, is not in submitting these issues with regard to the coupling, and its connection with the accident, but in authorizing a verdict for appellees upon this ground alone. The rule of invited error is one of estoppel. "Where the court upon the trial is requested to affirm a proposition of law in the charge and it is so affirmed the rule applies." (Missouri, K. & T. Ry. Co. v. Eyer, 96 Texas, 75.)

The charge of the court on the measure of damages is complained of by appellants, and the objection is urged that it allows double damages for the same thing. This charge is rather complicated and it is questionable if it is not subject to criticism in the matter complained of. If appellants are liable, appellees would be entitled to recover whatever pecuniary benefits they may have been deprived of by reason of the death of their father, including the reasonable value of such nurture, care and education as they would have received from him if he had lived, but neither sorrow for the death of the deceased nor the loss of his society can be considered as elements of damage. (International & G. N, Ry. Co. v. McVey, 12 Texas Ct. Rep., 993.)

In the seventeenth assignment of error objection is made to the charge of the court, "that Green, until he had knowledge to the contrary, if any, had the right to assume that the drawhead, track, rails, and spikes, which he was called upon to use, were reasonably safe and that the business was conducted in a reasonably safe manner." Para-

graphs of the charge immediately preceding suggest that, by an unintentional omission, Green is made liable only for such defects, in the matters referred to, as he had knowledge of, but not for such as, in the ordinary discharge of his duties, he must have known of. We call attention to this in view of another trial.

One of the theories presented by the evidence was that Green's death was caused solely by having his foot caught in an unblocked frog, without which the defective coupling, if it was defective, would have been harmless to him. Upon this theory appellants' special requested charge No. 2, presenting this issue disconnected from others, should have been given. Under appellees' pleadings there could be no recovery if· in fact the immediate cause of Green's death was getting his foot caught in the frog. We think that special charge No. 4, requested by appellants, should have been given.

Other assignments of error do not require to be specially noticed.

This accident occurred in 1886, before the amendment of the statute with regard to suits for injuries resulting in death, by the Act of March 25, 1887. (Acts 1887, chap. 62.) Under the original statute railroad companies and other owners, hirers, etc., of means of public transportation of freight and passengers were liable in such cases when death was produced by their own negligence, or by the gross negligence of their agents and servants. (Revised Statutes, art. 2899.) In view of another trial·attention is called to the distinction between the negligence of the principal as to those duties which can not be assigned to an agent or servant so as to absolve the principal from responsibility, and the negligence of the agents or servants in the matter of those duties and obligations not coming under the former head. (Burns v. Merchants & Planters Oil Co., 63 S. W. Rep., 1061; Bailey's Master & Servant, 129.)

For the errors indicated the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*