WILSON et al. v. BARNES et al.

No. 14130.

Court of Civil Appeals of Texas. Dallas.

Oct. 28, 1949.

Rehearing Denied Nov. 18, 1949.

Roland Boyd, of McKinney, and Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellants.

Biggers, Baker & Lloyd, of Dallas, and Abernathy and Abernathy, of McKinney, for appellees.

CRAMER, Justice.

This is a damage suit growing out of a collision between an automobile driven by Wm. E. Barnes and an ambulance owned by Pat Wilson and driven by his employee, Raymond Partain, which occurred about 8:30 P.M., May 22, 1948, on Highway 24, approximately five miles east of McKinney. Appellee Barnes filed suit in his own behalf and as next friend for four of his minor children. Barnes sought recovery for his own personal injuries, damage to his automobile, and damages growing out of the death of two of his minor children who were killed in the accident. The jury found negligence on the part of the appellants, contributory negligence on part of Wm. E. Barnes, and discovered peril issues against appellants. The trial court rendered judgment on the verdict of the jury for $10,000 in favor of Wm. E. Barnes for his injuries; for $4,870 medical expenses (after remittitur of $630 from the jury's finding of $5,-500 medical expenses); for $1,500 for the death of his minor child Wanda; for $3,500 for the death of his minor child Rita; and no damages to the other four minor children for their injuries. Appellants have duly perfected their appeal from such judgment.

Appellants assign four points of error, in substance: (1) There was no competent evidence raising the issue of discovered peril; (2) in the overruling of appellants' motion to enter judgment notwithstanding the jury's answers on discovered peril; (3) failure to grant a new trial since the jury's answers on discovered peril were contrary to the weight of the evidence; and (4) in rendering judgment where the jury's answers to special issues 1 and 2, that the ambulance driver failed to keep a proper lookout and such failure was a proximate cause of the accident and the finding of discovered peril, are in irreconcilable conflict.

The first three of the points will be considered together. The jury findings to issues other than discovered peril were that the ambulance driver failed to keep a proper lookout which was a proximate cause of the collision; that he was not on his lefthand side of the highway; he was driving the ambulance at a greater rate of speed than an ordinarily prudent person would have driven it, which was a proximate cause of the collision; that he was traveling at a greater rate of speed than 55 miles per hour, which was a proximate cause of the collision; that he did not fail to lower the beam of his headlights; and that he was not under the influence of liquor.

The jury found that Barnes failed to keep a proper lookout, which was a proximate cause of the collision; that he was driving his automobile on the lefthand side of the road, which was a proximate cause of the collision; that he was not driving his car at an excessive rate of speed; that his car had proper headlights; and that his failure to apply his brakes was not negligence. To the issue of discovered peril, the jury found that prior to the collision the Barnes car was in a perilous position, which was actually discovered by Partain, the ambulance driver, within such time and distance as that, by the exercise of ordinary care in

the use of all means at his command consistent with safety to himself, the ambulance and his passengers, he could have avoided the collision; that after the discovery and realization of such peril he failed to use all means available to him to avoid the collision, consistent with the safety of himself, the ambulance and his passengers; that such failure was negligence and a proximate cause of the collision in question. The evidence discloses that the ambulance driver, as he approached the Barnes car, although he did not keep a proper lookout for the Barnes car, did discover it in time to have, by the use of all means at hand, avoided the collision. It shows that as the ambulance approached the Barnes car, the Barnes car was partially (about two feet) over on its left side of the road. The highway patrolman, on the witness stand, prepared a diagram as follows:

until it came to rest off the road. The ambulance is marked with the figure (1); the Barnes car marked with a (2). The Barnes car was located 20 feet from the point of the collision; the ambulance 90 feet from such point.

This plat and the highway officer's testimony with reference thereto, his testimony as to the width of the black stripe in the center of the road (6 inches) shown by a broken line, the width of the highway (35 feet) which of course meant 17 feet, 3 inches of concrete on each side of the outside of the black stripe, the gravel shoulder together with the width of the ambulance and width of the Barnes car, the line of travel of the ambulance as shown by the skid marks, we think were sufficient for the jury to find as they did on the issue of discovered peril.

The jury could have concluded from such testimony alone that by a reasonable effort

He testified that this diagram substantially represented the position of the two cars involved when he arrived on the scene; that the ambulance skid marks on the road were about 64 feet in length, leading up to the point of the collision, and were about 4 to 6 inches from the center line. He put a cross on the diagram, showing the point on each car where it was struck by the other car; also a cross on the road where the condition of the road showed the collision occurred; also, from the point of the collision, the line of travel of the ambulance

to guide the ambulance to the right after he discovered the perilous position of the Barnes car (the fact that he put his brakes on 64 feet back indicates, and is sufficient to justify the conclusion that he discovered the peril at least that far back from the point of collision) he could have avoided striking the Ford automobile. Under the facts in this case we are of the opinion that the evidence raised the issue of discovered peril and that the findings were not against the preponderance of the evidence thereon. Appellants' first three points are overruled.

The fourth point has been decided against appellant. See Northern Texas Traction Co. v. Weed (Tex.Com. App. Holdings adopted by Supreme Court) 300 S.W. 41, where the Court, at page 43, held as follows: "The failure of the motorman to keep a lookout and the result of such failure might be one cause, and his discovery of the danger later on and failure to use the means at hand to prevent the injury be another cause, and each of these causes might be a proximate cause of the injury." Also, 300 S.W. at page 44: "The vital and controlling issue in every case of discovered peril is whether the perilous position of the injured party is discovered in time to avoid the injury by the use of all the means at hand. In nearly all cases of injury there is a discovery of the danger at some point prior to the injury, and the crucial issue is the time of discovery. Missouri K. & T. Ry. Co. v. King, Tex.Civ.App., 123 S.W. 151; Texas & Pacific Ry. Co. v. Breadow, 90 Tex. 26, 36 S.W. 410; San Antonio Traction Co. v. Kumpf, Tex.Civ. App., 99 S.W. 863; Missouri K. & T. Ry. Co. v. James, 55 Tex.Civ.App. 588, 120 S.W. 269; and Missouri K. & T. Ry. Co. v. Eyer, 96 Tex. 72, 70 S.W. 529. In this case the evidence is undisputed that there was a discovery of defendant in error's peril prior to the injury, and the very issue for the jury was whether the discovery was in time to avoid the collision and resultant injury." See also St. Louis, B. & M. Ry. Co. v. Cole, Tex.Com.App., 14 S.W.2d 1024; Shannon v. Horn, Tex.Civ. App., 92 S.W.2d 1090, writ dis. In line with such authority we hold that there is no conflict between the findings of failure to keep a lookout and the issue of discovered peril. Judgment is therefore

Affirmed.

## On Rehearing.

The appellants in their motion for rehearing complain that the original opinion failed to "discuss the fact that this was a night-time accident; that the driver of the defendants' truck came over the crest of the hill to be confronted with lights of a vehicle approaching on the wrong side of the highway; that under the speed of the two vehicles, as found by the jury, not over two or three seconds could have elapsed from the time the ambulance came over the hill until the collision, and that therefore there was absolutely no last clear chance, with time for deliberation and judgment, for the driver of the ambulance to avoid the accident."

The accident in question occurred at night and both automobiles had their headlights burning.

The appellants' witness, Everett Brandon, State Highway officer who drew the plat shown in our original opinion, was asked to measure, on the ground, the distance from the crest of the hill to the place of the accident. After he made the measurements on the ground, appellants again placed him on the stand and he then testified: "Q. Will you tell the jury what measurements you made out there and the extent of those measurements? A. The part that he asked me to take the measure on, was about a hundred yards. The distance from the crest of this hill to the point of this impact where the accident occurred."

We are of the opinion that, the ambulance driver having driven at least 300 feet after he could have seen the appellees' automobile, and having put on his brakes with enough pressure to skid his casings for 64 feet before the collision, and the accident having occurred at night, the evidence fully raised the issue of discovered peril for the jury; and since the ambulance proceeded 236 feet from the crest of the hill toward appellees' automobile before he put on the brakes sufficiently to skid the tires 64 feet to the place of the accident, the jury finding of no proper lookout does not conflict with the findings on discovered peril.

The motion for rehearing is overruled.